## HAMILTON *against* THE COMMONWEALTH.

An indictment, founded on a statute, must set forth the charge in those words of the statute which describe the offence. Hence an indictment under the statute which makes it indictable *by force and violence* to take and carry away a negro or mulatto, &c., was *held* to be defective, because the words by "force and violence" were omitted.

WRIT of error to the Court of Quarter Sessions of *Westmoreland* county.

*Alexander Hamilton*, the plaintiff in error, was indicted for taking and carrying away a negro from the county of *Westmoreland* to the state of *Virginia*, with the design of selling him for a slave. The indictment contained four counts; upon the first three the defendant was acquitted, and convicted upon the last. Several errors were assigned and argued, but as the first, which is fully stated in the opinion of his Honor, who delivered that of the court, was fatal to the judgment, there was none other decided by this court.

*A. W. Foster* for plaintiff in error. The words "force or violence " which are used in the statute, creating and defining the offence, are essential; and the omission of them in the bill of indictment vitiates the judgment. Cited *Commonwealth* v. *Honeyman*, 2 *Dall.* 228. 1 *Chit. Crim. Law*, 168, 228. 3 *Chit. Crim. Law*, 835.

*J. Findlay* for the State.

The opinion of the court was delivered by

KENNEDY, J.—The plaintiff in error was tried on an indictment in the Court of General Quarter Sessions of the peace for *Westmoreland* county, at August sessions, 1829, and found guilty on

(Hamilton *v.* The Commonwealth.)

the fourth count of the indictment, and acquitted on the others. The court sentenced him "to pay a fine of·five hundred dollars to the commonwealth, to be confined in the penitentiary for the term of seven years, to be 'kept to hard labor and fed and clothed in the manner directed by the penal laws of the commonwealth, &c."

The fourth count in the indictment charges "that the said *Alexander Hamilton* afterwards, to wit, on the day and year aforesaid, at the county aforesaid, and within the jurisdiction of this court, with *force and arms* in and upon a certain negro man, named *John Vast* aforesaid, in the peace of God and of the commonwealth then and there being, another assault did make, and him the aforesaid negro man, named *John Vast* aforesaid, feloniously did cause to be taken and carried away from the county aforesaid to the state of *Virginia*, a place out of this commonwealth, with a design and intention of causing the said negro man, named *John Vast* aforesaid, to be kept and detained as a slave. To the evil example of all others in like cases offending, contrary to the form of the act of Assembly in such cases made and provided, and against the peace and dignity of the commonwealth of Pennsylvania."

This indictment is alleged to be founded upon the first section of an act of Assembly, entitled "An act to give effect to the provisions of the constitution of the United States, relative to fugitives from labor; for the protection of free people of color, and to prevent kidnapping."

By this section of the act it is declared, "That if any person or persons shall, from and after the passing of this act, *by force or violence*, take and carry away, or cause to be taken or carried away, and shall, *by fraud or false pretence*, seduce or cause to be seduced, or shall attempt so to take, carry away or seduce any negro or mulatto from any parts of this commonwealth, to any other place or places whatsoever, out of this commonwealth, with a design and intention of selling and disposing of, or of causing to be sold, or of keeping and detaining or of causing to be kept and detained such negro or mulatto as a slave or servant *for life*, or *for any term* whatsoever, every such person or persons his or their aiders or abettors shall, on conviction thereof in any court of this, commonwealth having competent jurisdiction, be deemed guilty of a felony, and shall forfeit and pay, at the discretion of the court passing sentence, any sum not less than five hundred nor more than two thousand dollars, one-half whereof shall be paid to the person or persons who shall prosecute for the same, and the other half to this commonwealth; and moreover, shall be sentenced to undergo a servitude for any term or time not less than seven years, nor exceeding twenty-one years, and shall be confined and kept to hard labor, fed and clothed as is directed by the penal laws of this commonwealth, for persons convicted of robbery."

(Hamilton v. The Commonwealth.)

*Henry Fulton*, Esq. was endorsed on the bill of indictment as prosecutor.

The plaintiff in error, by his counsel, has assigned three errors; the first of which is considered fatal by this court; and upon it alone an opinion will therefore be delivered.

The first error is in not charging the defendant below with having caused the said negro man, named *John Vast*, to be taken and carried away *"by force or violence."*

*Hawkins* in his pleas of the crown, *Book* 2, *No.* 25, *Sec.* 110, says "I take it for a general rule, that unless the statute be recited, neither the words *contra formam statuti*, nor any periphrasis, intendment or conclusion, will make good an indictment which does not bring the *fact* prohibited or commanded, in the doing or not doing whereof the offence consists, within *all the natural words of the statute*. And upon this ground it was that it hath been resolved, that an indictment of rape, finding that the defendant on such a day and place, *A. B. felonice cepit et eam adtunc et ibidem carnaliter cognovit, &c. contra voluntatem suam, &c.* is not sufficient without the word *"rapuit,"* because that is the word used by the statute, which makes the offence felony. So in *East. page* 985, *sec.* 58, it is laid down as a general rule, that "an indictment on a statute must in general set forth the charge in the *very words of the statute* describing the offence; for *equivalent words* are not sufficient;" see also *Rex. v. Pemberton*, 2 *Burr.* 1037. If a statute, in describing an offence which it creates, uses the word *"unlawfully,"* the indictment founded on the act, will be bad if it be omitted. 1 *Chitty Crim. Law*, 241. *Hawk.* 6, *No.* 25, *Sec.* 96. *Bac. Abr. Indictmt.* 9.

The foregoing rule has perhaps been dispensed with occasionally in cases of trespass or misdemeanor, but, I apprehend, not in cases of felony. Neither of the words "force or violence" which are used in the act, are employed in the indictment. It is said, however, that the words "force and arms" are used and are the same with the words "force" or "violence." It is true that the word "force" is used; but how and where is it used? certainly not in describing or charging the offence created by the act of Assembly. It is used in charging an assault committed by the defendant below upon the negro, which is an offence at common law, independent of the statute. But it is further contended, that the assault which is charged to have been committed by the defendant, with *force* upon the negro, is coupled with the causing him to be *taken and carried away*, by the conjunction "and," and thus it is shewn to have been done at the same time and place, and to have been part of the same act.

It is a rule applicable to civil pleading, as well as indictments, that every issuable and triable fact must be set forth, with time and

(Hamilton *v.* The Commonwealth.)

place; and when there are several such facts alleged, it is not sufficient merely to mention at the beginning of the indictment the time and place, but they must be repeated to every issuable and triable fact; for whenever a venue is necessary, time must be united with it. After the time has been once named with certainty, it is afterwards sufficient to refer to it by the words "then and there," which have the same effect, as if the day and year were actually repeated, and will even shew the fact, which is stated in connection with them, if necessary to constitute the offence intended to be charged, to be a part of the same transaction which the conjunction "and," of itself, in many cases will not do or be sufficient for. Thus in an indictment for robbery, these words "then and there" must be connected with the stroke or the robbery, and not merely with the assault. 1 *Chit. Crim. Law*, 198-9, 229, 220. And in a case of murder, it is not sufficient to allege that the defendant on a certain day made an assault *and* struck the party killed; but the words *"then and there"* must be introduced before the averment of the stroke. See *Buckler's case, Dyer.* 69. 1 *Chitty Crim. Law*, 220. Nor will the word "immediately" help the matter, for it is even too uncertain an allegation, when time constitutes part of the offence. See *Rex* v. *Francis, et als., Comyn's Rep.* 478. *Chitty Crim. Law,* 220. These words "then and there" make all to be done at the same time, (*Heydon's case,* 4 *Co.* 41,) and therefore, where it was averred, that A, B and C feloniously and of their malice afore-thought, made an assault upon S, *and then and there* feloniously struck the said S, *and then and there* gave the said S a mortal wound, it was held sufficient; and the words "feloniously and of malice afore-thought" were held to refer to all the subsequent words. *Ibid.* In some cases, the words *then and there* are more certain than even a repetition of the day and year, for the latter will not be sufficient, where, in order to complete the offence, connected acts must be shewn to be done *at the same time;* but the terms *then and there* must be adopted. 1 *Chitty Crim. Law,* 221. Thus in the case of *Rhenwick Williams,* on an indictment upon the 6 *Geo. I. ch.* 28, for feloniously assaulting *Ann Porter,* with intent to spoil her clothes, when the *assault and spoiling* ought to have been shown to be *continuous;* it was charged, that he, on the 18th of January, 1790, at the parish of *Saint James,* within the liberty of *Westminster,* in the county of *Middlesex, with force and arms,* at the parish aforesaid, &c., unlawfully, *wilfully, maliciously* and feloniously, did make an assault upon *Ann Porter,* spinster, then and there being, &c., with an intent *wilfully* and *maliciously* to tear, spoil, cut and deface her garments and clothes; and that the said *Rhenwick Williams, on the said* 8*th of January,* in the 30th year aforesaid, with force and arms, at the parish aforesaid, &c., unlawfully, wilfully, maliciously, and feloni-

(Hamilton *v.* The Commonwealth.)

ously, did tear, spoil, cut and deface, one silk gown, &c., and concluding against the form of the statute, it was held upon consultation of all the judges, that the indictment was bad, in connecting the assault, with the tearing of the clothes, by the conjunction "and," with the repetition of the day and year of the assault, instead of doing it by the terms, "*then and there*," which would have shown, as the court said, that the assault and tearing were done at the same time, and were *continuous acts.* This case in particular is directly applicable to the one now under the consideration of the court. By a proper construction of that clause of the section of the act, upon which the indictment is said to have been drawn, it is conceived, that *force* or *violence* is a necessary ingredient of the offence, and unless it be connected with the taking and carrying away of the negro, the crime cannot be committed. It is the causing of a negro or mulatto to be taken and carried away by *force* or *violence,* that is here prohibited; and if it be not shown in the indictment, that it was accomplished by such means, it does not fall within the prohibition of the statute. Now it is clear, that the defendant below might have committed an assault, with force and arms, upon the negro, on the day and at the place charged in the indictment; and on the same day, and at the same place, have caused him to be taken and carried away without the least force or violence, or even *fraud* or *false pretence,* which is not pretended to have been used. So strict has the rule been in the use of the terms, *adtunc et ibidem,* to connect those things on the record in criminal proceedings, which, in order to be regular, ought to be shown to have been done at the same time, and to have been parts of the same transaction, that in the *King* v. *Morris,* 2 *Stra.* 901, the judgment, after conviction on an indictment, was arrested, because they were left out as to the swearing of the jury. In conformity to this rule, the Supreme Court of this state, decided the case of *Honeyman,* 2 *Dal.* 228–9. He was indicted for murder, tried and convicted. The indictment charged the assault to have been made feloniously, but did not allege the strokes and kicks which occasioned the death, to have been given feloniously, nor did it connect the assault with the giving of the strokes and kicks by the terms "*then and there,*" but merely by the conjunction "*and;*" and for this defect the judgment against *Honeyman* was reversed. Had the assault, as laid, been connected with the strokes and kicks set forth in the indictment, by the words "and then and there," it would have been good, according to the principle decided in *Heydon's Case,* already noticed, 4 *Co.* 41.

Where the life, liberty, or reputation of a fellow-citizen is at stake, it is very reasonable that the law should require the utmost precision in a criminal proceeding, which may affect him in these particulars. Hence it appears to me that upon reason as well as

(Hamilton *v.* The Commonwealth.)

upon the force of authority, that the *force* with which the assault is alleged to have been committed, cannot be considered as referring to the subsequent *taking and carrying away,* charged in the indictment.

It is, however, contended in the next place, that under a correct construction of the act of assembly in this behalf, where a person *causes* a negro or mulatto to be *taken and carried away,* although without *fraud or false pretence, force* or violence, is not necessary to be used in the *taking* and *carrying away,* in order to make him liable to the punishment therein prescribed; or if it be, that the words *"take and carry away,"* necessarily *ex vi terminorum,* imply the *force* which is required by the act to constitute the offence.

The words in this part of the act are, "that if any person or persons shall, from and after the passing of this act, *by force or violence,* take and carry away, or cause to be taken or carried away, and shall, by *fraud or false pretence,* seduce or cause to be seduced, or shall attempt *so to take, carry away,* or seduce any negro, &c." It is not denied, I believe, that if the party himself in person take and carry away the negro, but that *force or violence* must be employed, according to the terms of the act, in order to constitute the offence; yet it is insisted on, that if he causes another to take and carry away the negro, *force or violence* is not requisite. I am unable to perceive any reason why the legislature should have designed such a distinction. It is impossible, from the nature of the thing itself, that the man who employs another to do an act can be more guilty than if he done it himself in person; or that he should deserve punishment in the first case, and not in the last. Is there, then, any grand principle of policy which demands punishment in the one and not in the other? None has been suggested; and if there be any such, I confess myself altogether unable to discover it. On the contrary, there appears to me to be something so unreasonable in it, that I cannot for a moment give way to the idea. Upon a fair interpretation of the act, it appears to me, that the offence intended to be thereby created, cannot be committed, unless the taking and carrying away of the negro be effected or attempted by *force,* or *violence,* or *fraud,* or false pretences; and that without the use of one or other of these means, it can neither be done, nor yet caused to be done; and whether effected in the one way or the other, it is indispensably necessary that it should be so set forth in the indictment. The act of assembly has created and defined the offence; and the terms of the act must be pursued, therefore, in stating it.

But do the words "take and carry away," necessarily imply that degree of *force* and *violence* which is contemplated by the act? It is certainly true that in charging offences known to the common

(Hamilton *v.* The Commonwealth.)

law, whatever is necessarily implied in the words used for that purpose, need not to be stated further by other terms. For instance, the word "forged," necessarily implies *falsehood,* and therefore it is unnecessary in charging the crime of forgery to say *"falsely* forged." But I doubt much the general applicability of this rule to offences created and made felony by statute, when such other words have been superadded by the legislature. If it were so, it would set aside the rule already noticed, which requires that the offence shall be laid in the terms of the statute, and that no *equivolent* words will be sufficient to supply their place. But I deny that the words "take and carry away," do necessarily imply *force* or *violence* at all; nor can it be believed that the legislature thought so, otherwise they would not have deemed it necessary to have inserted these terms in addition to the words "take and carry away." The word "take" does sometimes mean "arrest," which, when applied to a person, conveys necessarily the idea of force; but it also frequently means, to carry, transport, convey; to receive what is *offered,* is to *take* a bribe. Its meanings are various, some of which imply force, and some not. The same is also true of the word "carry." And these two words being combined together by the conjunction "and," does not change their meaning so as necessarily to imply *force or violence,* The words "take and carry away," are the very terms that have ever been used in the action of trespass for taking and carrying away goods, and so little was it conceived that they implied force, that it was deemed necessary to charge the taking and carrying away of the goods to have been done with *force and arms:* and this, too, in civil cases, which requires less strictness. In 2 *Co,* 443, 526, and 536, it was held, that the taking and carrying of the goods must be laid *vi et armis;* for the omission was substance, and continued to be so until 16 & 17 *Car,* 2, c. 8, aided it after verdict, and 4th & 5th *Ann.* upon general demurrer. *Com. Dig. pleader.* 3 *M.* 71. 1 *Saund.* 81. & *note* 1. It is easy to conceive of possible cases, in which negroes may be taken and carried out of the state, for the purpose of being left, so as to be kept and held in slavery, without the least possible danger of *force* or violence being employed; and done most innocently too. If a slave for life run away from his master residing in *Virginia,* and come into *Pennsylvania,* where he unfortunately gets one of his legs broken, and his master has advertised a reward of one hundred dollars, to be paid to any person who shall bring the negro home; the negro, under his misfortune, repents of having left his master's service, and is anxious to return: he, however, is unable to go himself, and solicits the defendant to *carry* him back to his master in *Virginia:* the defendant, in expectation of receiving the reward of one hundred dollars, *takes and carries the negro away,* according to his desire, out of this state to his master, in a vehicle

(Hamilton *v.* The Commonwealth.)

provided by him for the purpose.    Now although the negro in this case is *taken and carried away*, out of this state into that of *Virginia*, with the intention, too, of being left in slavery for life, how is it possible to imagine the use of any *force or violence* exercised upon the negro in doing it, or to suppose for a moment that the defendant came within the prohibition and penalty of the act; yet, there was clearly "a taking and carrying away of the negro," which must be admitted to have been done without force; but if the defendant had not gone himself with the negro, but employed and sent another, he, according to what has been contended, would be guilty of the offence created by the act, because he did not take and carry away the negro himself; he only caused it to be done, and in this case force or violence is unnecessary to be used to constitute the offence.    To this I can never bring my mind to assent, because I believe it is not merely foreign to, but in direct opposition to what was intended by the legislature.

HUSTON, J. and ROSS, J. dissented.

Judgment reversed.